Present:  Hassell, C.J., Keenan, Koontz, Kinser, Lemons, and Agee, JJ., and Russell, S.J.

MISSION RESIDENTIAL, LLC                    OPINION BY
                                 SENIOR JUSTICE CHARLES S. RUSSELL
v.  Record No. 062250                   January 11, 2008

TRIPLE NET PROPERTIES, LLC


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Gaylord L. Finch, Judge[*]

This is an appeal from an order denying a motion to stay arbitration proceedings pursuant to Code § 8.01-581.02(B).

Facts and Proceedings

The facts are not in dispute.  In 2004, Triple Net Properties, LLC (Triple) was a firm engaged in the business of syndicating commercial properties for sale to investors as real estate securities.  Mission Residential, LLC (Mission) was a firm with expertise in locating, evaluating, purchasing and managing multi-family apartment properties.  The two firms, which were otherwise unrelated, entered into a joint venture for the purpose of identifying, purchasing, managing and selling multi-family properties for investors seeking to avail themselves of the tax advantages offered by Section 1031

---

[*] The record shows that Judge J. Howe Brown heard the case and made the ruling that is the subject of this appeal.  Judge Gaylord L. Finch later entered the amended order from which the appeal is taken.  Judge M. Langhorne Keith subsequently entered an order denying a stay of arbitration pending appeal.

of the Internal Revenue Code, 26 U.S.C. § 1031, for like-kind exchanges of qualifying properties.

In order to accomplish that purpose, Mission and Triple agreed to form a limited liability company named NNN/Mission Residential Holdings, LLC (Holdings) and executed an "Operating Agreement" for Holdings dated "as of October 1, 2004." The operating agreement provides that Mission and Triple are to be the sole members of Holdings, with equal membership interests, and are to manage Holdings jointly. The sole question presented by this appeal is the effect of Section 13.9 of the operating agreement, which provides in pertinent part:

> "Disputes. The Members shall in good faith use their best efforts to settle disputes regarding their rights and obligations hereunder. All disputes that the parties have failed to resolve shall be submitted to arbitration. All arbitration to resolve a dispute shall be conducted in accordance with the provisions of this Section 13.9 and to the extent not inconsistent therewith, the Commercial Arbitration Rules of the American Arbitration Association ("AAA") . . . . The arbitrator's award shall be final, binding and not subject to appeal."

In March 2006, Triple commenced an arbitration proceeding against Mission, asserting a direct claim for breach of contract and also a derivative claim against Mission on behalf of Holdings. The arbitrator ruled that Triple lacked standing to assert the direct claim, but allowed Triple's derivative

2

claim on behalf of Holdings to go forward. In August 2006, Mission brought this action in the circuit court, seeking a declaratory judgment that there was no agreement to arbitrate disputes between Holdings and Mission, requesting an order to stay the arbitration proceeding pursuant to Code § 8.01-581.02(B), and seeking other relief.

Mission asked the arbitrator to defer a ruling on the arbitrability of Triple's derivative claims pending a judicial determination of that issue, but the arbitrator declined to do so, and on August 29, 2006, ruled that the derivative claims were arbitrable. The arbitrator based his ruling on Rule R-7(a) of the Commercial Arbitration Rules of the American Arbitration Association, which was incorporated by reference in Section 13.9 of the operating agreement. Rule R-7(a) makes the arbitrator the sole judge of the issue of arbitrability.

In October 2006, after a review of the pleadings, exhibits and arguments of counsel, the circuit court ruled that the arbitrator had correctly decided the issue of arbitrability. The court entered an order denying the motion to stay arbitration and dismissing Mission's complaint. We awarded Mission an appeal.

## Analysis

The law of contracts governs the question whether there exists a valid and enforceable agreement to arbitrate. Such

3

an agreement must contain the essential elements of a valid contract at common law.  The question whether such a contract exists is a pure question of law, to which we apply a de novo standard of review.  Phillips v. Mazyck, 273 Va. 630, 635-36, 643 S.E.2d 172, 175 (2007) (citations omitted).

"A party cannot be compelled to submit to arbitration unless he has first agreed to arbitrate."  Doyle & Russell, Inc. v. Roanoke Hosp. Ass'n, 213 Va. 489, 494, 193 S.E.2d 662, 666 (1973) (citations omitted).  When the question before the court is whether the parties have agreed to arbitrate, there is no presumption in favor of arbitrability.  Rather, the party seeking arbitration has the burden of proving the existence of the agreement.  See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 945-46 (1995).  A presumption in favor of arbitrability arises only after the existence of such an agreement has been proved, and the remaining question is whether the scope of the agreement is broad enough to include the disputed issue.  Id.  Here, Triple bore the burden of proving that Mission had contracted to arbitrate Mission's disputes with Holdings.

We adhere to the view that the public policy of Virginia favors arbitration.  TM Delmarva Power, L.L.C. v. NCP of Va., L.L.C., 263 Va. 116, 122-23, 557 S.E.2d 199, 202 (2002).  Nevertheless, that policy does not impair the constitutional

4

right of a party to have access to the courts, including the right to a jury trial if requested, unless that party has, by contract, voluntarily waived those rights.

Triple argues that the operating agreement committed the parties to that agreement, Mission and Triple, to arbitrate all "disputes regarding their rights and obligations hereunder," and that Triple's derivative claim was nothing more than a dispute regarding Mission's duties under the operating agreement. We do not agree. Triple's argument ignores the separate existence of Holdings, which was not a party to the operating agreement.

Like a corporation, a limited liability company is a legal entity entirely separate and distinct from the shareholders or members who compose it. Code §§ 13.1-1009, -1019; C.F. Trust, Inc. v. First Flight Ltd. P'ship, 266 Va. 3, 9, 580 S.E.2d 806, 809 (2003). A derivative action is an equitable proceeding in which a member asserts, on behalf of the limited liability company, a claim that belongs to that entity rather than the member. Code § 13.1-1042. The derivative claims asserted by Triple belonged to Holdings, not to Triple. Little v. Cooke, 274 Va. 697, 709, 652 S.E.2d 129, 136 (2007); Simmons v. Miller, 261 Va. 561, 573, 544 S.E.2d 666, 674 (2001) (citation omitted). A party asserting a derivative claim is not the real party in interest, but is "at

best the nominal plaintiff." <u>Ross v. Bernhard</u>, 396 U.S. 531, 538 (1970); <u>see</u> <u>also</u> <u>Little</u>, 274 Va. at 709, 652 S.E.2d at 136 (citing <u>Mount v. Radford Trust Co.</u>, 93 Va. 427, 431, 25 S.E. 244, 245 (1896)). Although Mission and Triple might have chosen to employ language that would have committed them to arbitrate their disputes with Holdings, they did not do so. Thus, there was no contractual undertaking by which Mission had agreed to arbitrate any dispute with Holdings.

<u>Conclusion</u>

Because Triple failed to carry its burden of proving the existence of an agreement by Mission to submit to arbitration its disputes with Holdings, we will reverse the judgment appealed from and remand the case for further proceedings consistent with this opinion.

<u>Reversed and remanded.</u>