180

## CIRCUIT COURT OF FAIRFAX COUNTY

Jong Chung

v.

Medical Facilities
of Am., Inc., et al.

August 4, 2009

Case No. CL-2009-3263

BY JUDGE JONATHAN C. THACHER

This matter came before the Court on Defendant's Motion to Dismiss/Compel Arbitration, pursuant to Va. Code § 8.01-581.02. After considering the pleadings, the oral and written arguments of counsel, and the relevant legal authority, the Court denies the motion.

*Background*

*Factual Background*

In early 2007, Mrs. Jong Chung suffered a stroke. On February 28, 2007, Mrs. Chung was admitted to a medical facility operated by defendant Medical Facilities of America, Inc., and Medical Facilities of America XXIX, L.P., d/b/a/ Burke Health Rehabilitation Center (Defendants). At a hearing before this Court on June 26, 2009, both counsel agreed that Mrs. Chung was incapacitated at the time of her admission. Because of her incapacitation, several members of her family consulted about her care and agreed that her daughter, Esther Chang, would sign the necessary admission documents.

Although the Court suggested an evidentiary hearing be scheduled, the parties stipulated that no facts were in dispute and that the matter was a pure question of law.

The admission documents included a three page document labeled "Business Contract." Of the three pages, nearly a page is devoted to provisions providing for binding arbitration of disputes between the resident and the facility. "[A]llegations of neglect, abuse, negligence, or malpractice" are among the disputes governed by the arbitration provisions. A subsequent provision labeled "Binding Effect" states that "In the event Resident is medically incapable of understanding his or her rights or responsibilities created by this contract, or is otherwise unable to communicate, the Responsible Party agrees to that [sic] his/her execution of this agreement is in his/her personal capacity *and on behalf of Resident as Power of Attorney*" (emphasis added).

At the bottom of the third page, there is a line labeled "Resident's Signature," below that a line labeled "Responsible Party's Signature," followed by signature lines for what appear to be witnesses and various agents of the facility. The words "Individually and by/on behalf of Resident" appear in parenthesis directly beneath the "Responsible Party" line. Although there are some markings on the "Resident's Signature" line, the parties agree that the marks are not the signature of Jong Chung, or of Esther Chang. Esther Chang signed the document as the "Responsible Party."

On March 1, 2007, it appears that Mrs. Chung's son reviewed with her a document that detailed the rights of nursing home residents. Although the document is not signed by Mrs. Chung, a handwritten note indicates that the document was explained to her in her native language by her son and that she had no further questions about her rights as a resident.

On March 5, 2007, a Dr. Kim appears to have signed an order styled "Durable Do Not Resuscitate Order," certifying that Mrs. Chung was incapable of making an informed medical decision about her treatment. Esther Chang's signature appears on the document in her capacity as a "Person Authorized to Consent on the Patient's Behalf." The order instructs medical personnel to withhold lifesaving treatment from Mrs. Chung in the event she experienced cardiac or respiratory arrest.

Nothing in the record before the Court indicates when Mrs. Chung's medical condition improved to the point that she was no longer incapacitated. Presumably, at some point, her condition did improve because she filed suit on her own behalf on March 6, 2009. The record contains no information as to when she returned to lucidity or, other than instructing her attorney to file suit on her behalf, what actions she took.

182

Defendants moved the Court to compel arbitration in accordance with the contract on June 5, 2009. Mrs. Chung objected to arbitration. On June 18, 2009, Esther Chang executed an affidavit stating that she never had power of attorney or other authority to act on Mrs. Chung's behalf and that, to the best of her knowledge, Mrs. Chung "did not even know that there was an agreement."

## Arguments of Counsel

Plaintiff's position can be briefly summarized as follows. Mrs. Chung did not sign the agreement. At the time of admission she lacked the capacity to either sign on her own behalf or to authorize another person to sign for her. Esther Chang never had her mother's permission or authority to sign a contract containing a binding arbitration provision or to waive her mother's right to a jury trial. Because Mrs. Chung was not a party to the contract and because she appointed no one to act as her agent in this regard, she cannot be bound by the arbitration provision.

Defendants make two main points. First, they argue that, even if Esther Chang lacked her mother's actual authority to act on her behalf, she held herself out as possessing that authority, and she had apparent authority to act for her incapacitated mother. Second, they argue that the contract must be interpreted in light of the usual business practices in this heavily regulated industry, including how the term "responsible party" is defined and applied by regulation and statute. Based on the important powers accorded a "responsible party" by statute and regulation, including the power to order the denial of lifesaving treatment, they would have the Court infer a power to bind the Plaintiff to the contract without her consent.

There are powerful arguments for both sides. Under the laws and constitution of the Commonwealth, Mrs. Chung has the right to trial by jury, and, as the case is presented to the Court, she has never waived that right. On the other hand the Defendants relied on the solemn representations of Mrs. Chung's daughter that she was empowered by her mother to act on her behalf, and her daughter was certainly empowered to give instructions with respect to her mother's treatment. The laws of nature, if not of the Commonwealth, would certainly seem to support the defendant's reliance.

## Analysis

"In controversies respecting property, and in suits between man and man, trial by jury is preferable to any other, and ought to be held sacred." Va. Const., Art., 1, § 11 (1971). "Trial by jury is a sacred right, and should be

sedulously guarded." *Buntin v. Danville*, 93 Va. 200, 212, 24 S.E. 830 (1896). "[T]his mode of trial [trial by jury] is never to be taken away by implication, or without positive words in an act of Assembly." *Watson & Hartshorne v. Alexander*, 1 Va. (1 Wash.) 340, 354 (1794).

Although the Commonwealth's public policy favors arbitration, a party cannot be compelled to arbitrate a dispute without their agreement. *Doyle & Russell v. Roanoke Hospital*, 213 Va. 489, 494, 193 S.E.2d 662 (1973). When considering the threshold question of whether an arbitration agreement exists, there is no presumption in favor of arbitration. *Mission Residential, L.L.C. v. Triple Net Properties*, 275 Va. 157, 161, 654 S.E.2d 888 (2008).

The facts, as presented to the Court, are that Mrs. Chung was not personally a signatory to the agreement. She had not given Esther Chang any authority to enter the agreement on her behalf, and nothing in the record demonstrates that she ever ratified Esther Chang's purported acts on her behalf. Because Mrs. Chung never agreed to arbitrate the dispute, either personally, through her authorized representative, or by ratifying the act of her purported representative, the Court may not compel arbitration. *See, Doyle & Russell*, 213 Va. at 494.

The powers of a "responsible party" under the agreement are irrelevant because the uncontroverted fact is that Mrs. Chung never authorized Esther Chang to act on her behalf. Her affidavit and the contract she signed establish that Esther Chang misrepresented her authority. According to her sworn affidavit, she was never a responsible party because she was never authorized to act on her mother's behalf. This is true whether "responsible party" is defined by the parties in the contract,[1] or whether the Court somehow infers a definition of "responsible party" from applicable regulations. Although, in the contract, Esther Chang offered defendants her solemn assurance that she was indeed authorized to act as the "responsible party," her sworn affidavit states that the assurance offered was false and that she never had such authority. Esther Chang may have perpetrated a fraud on these Defendants, but it is difficult to see how her fraud could in and of itself destroy her mother's right to a jury trial.

Assuming that the Court has the power to estop Mrs. Chung from denying that she is a party to an agreement to waive her right to a jury trial, nothing in the record supports such a finding. There is no evidence that she continued to accept the benefit of the agreement after learning of its existence or, indeed, that she learned of it earlier than the moment that Defendants raised its existence in support of the instant motion.

---

[1] Despite counsel's representation, it is not.

Accordingly, the Court is left with Defendants' invitation to infer legislative intent to do something that the legislature has not seen fit to state expressly. Specifically, for the Defendants to prevail, the Court would have to find that, when a person is incapacitated, a responsible party as defined in Va. Code § 54.1-2986 is not only empowered to order or decline medical treatment on the incapacitated person's behalf, but also that the responsible party is empowered to enter contracts on behalf of the incapacitated person, including the power to waive the right to a jury trial in future disputes between the incapacitated person and the medical provider. The Court has no power to make such a finding. *See, Watson & Hartshorne v. Alexander*, 1 Va. (1 Wash.) 340, 354 (1794). Furthermore, the legislature has explicitly established a statutory scheme for the appointment of guardians to handle the affairs of incompetent persons. Defendants chose to ignore the requirements of the statute and to deal with the unauthorized, self-proclaimed, "personal representative" of the Plaintiff at their own risk.